**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Tony Lamer Rucker,<br><br>                                    Debtor(s). | C/A No. 11-01709-JW<br><br>Adv. Pro. No. 11-80041-JW<br><br>Chapter 13 |
| Tony Lamer Rucker,<br><br>                                    Plaintiff(s),<br><br>v.<br><br>Latoya Johnson and<br>The South Carolina Department of Social Services,<br><br>                                    Defendant(s). | **ORDER DENYING MOTION**<br><br>**FOR STAY** |

This matter comes before the Court upon a Motion to Stay Enforcement of Family Court Order of Incarceration ("Motion") filed in the referenced adversary proceeding.[1] The Motion seeks action against Latoya Johnson ("Ms. Johnson"), the domestic support obligation recipient, and the South Carolina Department of Social Services ("DSS"), the state agency that participates in the enforcement of child support obligations (collectively, "Defendants"). Pursuant to a motion for an expedited hearing, the Court issued an order setting the hearing on the Motion for April 21, 2011 and requiring that any objection, return, or response to the Motion be filed prior to 12:00 p.m. on April 20, 2011. A certificate of service filed with the Court indicated notice of the expedited hearing was served on the Berkeley County Family Court, the Defendants, and the Chapter 13 Trustee by expedited means on April 13, 2011.

---

[1] In the adversary proceeding, Debtor seeks an order of this Court which dissolves and voids the Family Court Contempt Order and requires the immediate release of Debtor from incarceration and seeks damages against the Defendants for violating the automatic stay.

No objection, return or response to the Motion was filed prior to the hearing. Debtor, Debtor's counsel, and the attorney for the Chapter 13 Trustee were present at the hearing. No one appeared on behalf of the Defendants.

## FINDINGS OF FACT

1. Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code on March 16, 2011. According to Debtor's attorney, a notice of filing chapter 13 was served on the South Carolina Department of Social Services ("DSS") and the Berkeley County Family Court ("Family Court").

2. On March 17, 2011, Debtor, through his attorney, served a Motion and Order in Reference to Bankruptcy ("Form Motion and Order") on DSS, as attorney for Defendant Latoya Johnson, by personal delivery to its office in North Charleston. Debtor proposed to file this Form Motion and Order with the Family Court to seek the release of Debtor from incarceration and rescission of all outstanding warrants for support. According to Debtor's counsel, he has previously used such a Form Motion and Order upon the filing of other bankruptcy cases to request the release of debtors who have been incarcerated for civil contempt due to the failure to pay child support. The Form Motion and Order provides a line for DSS to indicate its consent.

3. According to Debtor's counsel, the attorney for DSS did not consent to the Motion and Order in Reference to Bankruptcy in Debtor's case.

4. To date, Debtor has not filed the Form Motion and Order or made any other request to the Family Court to be released from incarceration or to consider any other relief as a result of Debtor's bankruptcy filing.

5. Pursuant to the Family Court Order of Financial Responsibility dated September 11, 2008 ("Family Court Order"), Debtor is required to pay child support in the amount of $235.20 per month through the Family Court beginning October 11, 2008. Debtor testified that Ms. Johnson and his minor child live in Orlando, FL and have not participated in the Family Court proceedings or this bankruptcy case.

6. Prior to Debtor's filing of bankruptcy, on August 31, 2010, the Honorable Wayne M. Creech of the Berkeley County Family Court ("Family Court") found Debtor in contempt for failure to pay child support ("Contempt Order"). Debtor was sentenced to incarceration for a term not to exceed one year. The Contempt Order provides that Debtor could purge himself of contempt and be released from confinement by paying $5,709.60 to the Family Court. The Contempt Order was not appealed. In the Contempt Order, the Family Court also found that Debtor was eligible for work release upon proof of employment.

7. There is no evidence that DSS or Ms. Johnson actively participated in the hearing which resulted in the Contempt Order or are acting presently to maintain Debtor's incarceration.

8. While incarcerated pursuant to the Contempt Order, Debtor participated in a work release program for approximately one month through work with the S.C. Department of Transportation. However, due to an altercation with his supervisor, Debtor was disqualified from the work release program.

9. Debtor testified that he believed he would have also been eligible for a good time early release from incarceration in February 2011 but lost this opportunity as well due to the altercation.

10. In this bankruptcy case filed on March 16, 2011, Debtor's schedules and statements indicate his monthly income is $1,548; he lists no creditors holding secured claims; his total unsecured non-priority claims, consisting primarily of medical debts, are $2,436; and the total unsecured priority claims, consisting of child support and attorney fees for filing this bankruptcy case, total $7,000.00. Debtor disclosed he paid his counsel $1,000 towards attorney fees from funds provided by his mother according to his testimony.

11. Debtor listed the value of his personal property as $2,225.00, which includes a 1992 Lexus LS 400 valued at $1,875.00. According to his Schedule C, Debtor asserts all of his property is exempt.

12. Debtor's Chapter 13 plan filed March 25, 2011 ("Plan") proposes to pay $180.00 per month for 57 months to the Chapter 13 Trustee with the first payment being due on April 24, 2011.

13. Three proofs of claims have been filed to date: Trident Regional Medical Center filed an unsecured, non-priority claim in the amount of $176.40; World Finance Corporation filed an unsecured non-priority claim in the amount of $298.47; and the Internal Revenue Service filed an unsecured priority claim of $400.00 and non-priority claim of $200.00.

14. At the hearing, Debtor testified that he presently and since the filing of bankruptcy has had no income. He testified that he had last been employed by a landscaping company in 2009 making a gross income of approximately $700 every two weeks. This employment ended in November 2009 and he testified that he was unemployed from November 2009 until his incarceration as a result of the Contempt Order in August 2010.

15. Debtor testified that when he thought he would be released from jail early for good time in February, he believed a friend that works at Alternative Staffing would be able to get him a temporary construction job at Boeing.

16. Debtor testified that he still believes he can obtain a temporary construction job at Boeing upon his release. Alternatively, Debtor believes he would be able to get his job back with the landscaping company. Aside from his testimony, Debtor presented no evidence of these prospective employment opportunities.

17. Debtor testified that he filed bankruptcy with his primary goal being that it would cause his release from jail. He learned of this possibility from another inmate, who advised him to contact his current counsel.

18. Debtor missed his § 341 First Meeting of Creditors due to his incarceration, which has been continued twice and currently re-scheduled for June 6, 2011.

## **CONCLUSIONS OF LAW**

By this Motion, Debtor requests a temporary restraining order against the Defendants to stay the enforcement of the Contempt Order arguing that his continued incarceration for civil contempt for failure to pay child support violates the automatic stay pursuant to 11 U.S.C. § 362(a)(1).[2] Alternatively, Debtor requests the Court determine whether the automatic stay prevents his continued incarceration.

A temporary restraining order is typically a predicate to a preliminary injunction which requires the plaintiff to establish that: (1) he would suffer irreparable harm if the injunction is not granted; (2) he will likely succeed on the merits of the litigation; and (3) there is an inadequate remedy at law. AJG Holdings, LLC v. Dunn, 382 S.C. 43, 51, 674 S.E.2d 505, 508 (S.C. Ct. App. 2009). "An injunction is a drastic remedy issued by the

---

[2] Further references to the Bankruptcy Code shall be by section number only.

5

court in its discretion to prevent irreparable harm suffered by the plaintiff." Scratch Golf Co. v. Dunes W. Residential Golf Props., Inc., 361 S.C. 117, 121, 603 S.E.2d 905, 907 (2004). The purpose of an injunction is to preserve the status quo and prevent possible irreparable injury to a party pending litigation. Peek v. Spartanburg Reg'l Healthcare Sys., 367 S.C. 450, 455, 626 S.E.2d 34, 36 (S.C. Ct. App. 2005).

Debtor argues that he will suffer irreparable harm if he is not released because he will not be able to perform the necessary obligations to complete his Chapter 13 bankruptcy case, such as obtain a job to make his plan payments and file tax returns requested by the Internal Revenue Service. Whether or not Debtor could file tax returns while incarcerated, the Court notes that the status quo at the time of the filing of bankruptcy was that Debtor was unemployed and incarcerated. The Court finds for the reasons stated below that Debtor has not met the heightened burden necessary to issue a temporary restraining order, but will address the primary argument made by Debtor in his Motion.

## **Issue**

Whether the automatic stay compels a family court to release a debtor incarcerated prepetition for contempt for failure to pay court ordered child support.[3]

## **Discussion**

Debtor argues that the automatic stay prevents his continued incarceration pursuant to § 362(a)(1) which provides that the automatic stay is applicable to "the commencement or continuation …of a judicial, administrative, or other action or proceeding against the debtor

---

[3] In In re Gillians, C/A No. 10-06461-JW, slip op. (Bankr. D.S.C. Nov. 17, 2010), the Court discussed concerns previously raised by the Chapter 13 Trustee and DSS regarding cases similar to this one in which debtors, incarcerated prepetition for failure to pay child support, file bankruptcy and are released by the family court upon counsel's argument to the state family court that continued incarceration violates the automatic stay of 11 U.S.C. § 362. In Gillians, the Court prescribed a procedure to address the feasibility and good faith concerns that arise in these cases. The procedure has not been followed in this case.

6

that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case…." 11 U.S.C. § 362(a)(1). The broad scope of the automatic stay stops most, but not all, proceedings against Debtor and his property during the bankruptcy case. However, the automatic stay does not allow a debtor to challenge the prepetition conduct of a creditor. Ralph v. Overstreet, 164 B.R. 382, 388 (Bankr. N.D.Ga. 1994). Section 362(b) provides several exceptions to the stay including the "collection of alimony, maintenance, or support from property that is not property of the estate." 11 U.S.C. § 362(b)(2). Alimony, maintenance and support obligations are nondischargeable in bankruptcy. As a condition of confirmation in a Chapter 13 case, a debtor must pay all domestic support obligations as they become due postpetition.

In a number of cases, courts have held that the automatic stay does not apply to contempt proceedings to enforce state court orders made prior to the filing of bankruptcy. In re Montana, 185 B.R. 650, 652 (Bankr. S.D. Fl. 1995); O'Brien v. Nachtigal (In re O'Brien), 153 B.R. 305, 308 (Bankr. D. Or. 1993). These courts reasoned that the contempt and incarceration were not violations of the automatic stay, but acts of a state court enforcing its own order. Id. For the reasons stated below, under the circumstances of this case, the Court declines to order Debtor released from incarceration due to the filing of his bankruptcy case and instructs Debtor to request relief from the Family Court.

First, the Court acknowledges the general disdain among federal courts of getting entangled in domestic matters. See In re Robbins 964 F.2d 342, 344 (4th Cir. 1992); Ralph v. Overstreet, 164 B.R. 382, 388 (Bankr. N.D.Ga. 1994). As mentioned in this Court's order in Gillians, bankruptcy courts do not have exclusive jurisdiction in determining whether the

7

automatic stay applies. In Gillians, the Court recognized that "[s]ince the state family court heard the underlying action, entered the contempt order, and has custody of the debtor at the time the bankruptcy case is filed, it is the best forum to decide whether the automatic stay is applicable."

Second, this Court is not aware of any ability to compel the Family Court to release Debtor with or without Defendants' consent. 28 U.S.C. §2241 provides only the "Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions" may issue a writ of habeas corpus. Even if this Court were to determine Debtor should be released from incarceration, whether bankruptcy courts have jurisdiction to issue a writ of habeas corpus is unclear. See In re Cornelious, 214 B.R. 588, 590 (Bankr. E.D. Ark. 1997) (finding no authority for bankruptcy courts to issue writs of habeas corpus); In re Bona, 124 B.R. 11 (S.D.N.Y. 1991) (discussing the problematic nature of the jurisdictional issue and declining to expressly decide whether bankruptcy courts had the authority to issue writs of habeas corpus). The Contempt Order in this case was entered prepetition and is final and therefore not void under § 362. Accordingly, it is questionable that this Court has the authority to compel Debtor's release contrary to an effective order of the Family Court.[4]

Notably, Debtor has not requested his release or filed a motion seeking any relief from the Family Court.[5] Given the domestic nature of the underlying matter and the limitations on this Court to compel the release, the proper course of action in this situation

---

[4] It is also questionable that this Court, absent consent or an effective waiver, could find the Family Court judge or DSS in violation of the automatic stay based upon sovereign immunity. See In re Cornelious, 214 B.R. at 590; In re Womack, 253 B.R. 247, 248-49 (Bankr. E.D. Ark. 2000) (finding the Eleventh Amendment precluded debtor from suing an agency of the State, absent consent or waiver).

[5] Debtor's counsel argued that he did not file a motion with the Family Court because DSS would not consent and, even if DSS had consented, the matter would be scheduled on the regular docket and may not be heard for 3 to 6 months. However, nothing in the record indicates that the consent of DSS would control the Family Court's decision or that Debtor could not request the motion be heard on an emergency basis.

8

would be for Debtor to file a motion in an expedited manner with the Family Court requesting his release. The Family Court could then consider whether to release Debtor in light of applicable state and federal law.[6] If Debtor is dissatisfied with the Family Court's decision, he has the option of appealing to a higher state court.

Third, the cases relied upon by Debtor in his Motion are distinguishable from this case. Debtor relies on In re Caffey, 384 B.R. 297 (Bankr. S.D. Ala. 2005), In re Johnston, 321 B.R. 262 (D. Ariz. 2008) and Moore v. Nunnari (In re Moore), Adv. No. 08-1139, C/A No. 08-11498, 2009 WL 16160179 (Bankr. N.D. Oh. 2009) for the proposition that the automatic stay prohibits his continued incarceration and Debtor should be released. In the cases cited by Debtor, the contempt proceedings were initiated and prosecuted by the domestic support claimants postpetition. In Caffey, the support claimant filed a motion for writ of arrest in an attempt to collect unpaid child support. Caffey was found in contempt on July 12, 2007 but the contempt order was not entered and the writ of arrest not executed until after the bankruptcy filing. Debtor was arrested pursuant to a state court's order and incarcerated on September 25, 2007. The bankruptcy court found that the contempt order and writ of arrest were entered postpetition and therefore were in violation of the automatic stay and were void *ab initio*.

Similarly, in Moore, the domestic claimant, Ms. Nunnari, filed a motion prepetition requesting the state court issue a show cause order to compel her former husband to comply with child and spousal support orders. After her former husband filed bankruptcy, the state court issued a ruling holding him in civil contempt of court. The bankruptcy court relied on Caffey in determining that Ms. Nunnari violated the automatic stay by seeking to collect

---

[6] If Debtor's continued incarceration is solely motivated for the purpose of collecting prepetition child support that can be feasibly treated in a confirmed chapter 13 plan, then issues related to the automatic stay may be implicated.

9

unpaid child support and spousal support through contempt proceedings after her former husband had filed a bankruptcy petition.

The fact pattern of Johnston is similar to both Caffey and Moore wherein the domestic claimant filed a motion for contempt prepetition and the state court found the former spouse in contempt and ordered his incarceration after the debtor filed bankruptcy.

There are several reasons that the cases cited by Debtor are distinguishable from Debtor's case. First, Debtor was found in contempt and incarcerated prior to filing bankruptcy for failure to pay child support in violation of the Family Court Order. Second, there is no evidence before the Court that either of the named Defendants have taken any actions postpetition to collect or enforce the payment of child support. Debtor acknowledged at the hearing that Ms. Johnson lives in Florida and has not participated in any of the Family Court proceedings to collect child support from Debtor. There is no convincing evidence before this Court to indicate that Defendants' consent to the Form Motion and Order would trigger or control the setting aside of the Family Court Order.

Finally, the Court has significant doubts about the feasibility of Debtor's plan and whether this bankruptcy case has been filed in good faith based upon the facts currently before it. In order to be eligible for chapter 13, a debtor must have "regular income." 11 U.S.C. § 109(e). Regular income is defined as income that is "sufficiently stable and regular … to make payments under a plan." 11 U.S.C. § 101(30). To adequately consider Debtor's request for relief in this Motion and avoid abuse of the bankruptcy process, it is appropriate to raise § 109(e) eligibility issues sua sponte. See In re Berenato 226 B.R. 819, 823 (Bankr.E.D.Pa. 1998). Here, Debtor does not appear to have "regular income" necessary to be eligible for a chapter 13 bankruptcy case. Debtor's schedules and statements indicate he

10

misrepresented his present monthly income as $1,548. At the hearing, Debtor testified that he had no income at the time of filing bankruptcy and was unemployed with no income for at least six months prior to his incarceration. Debtor's employment history prior to and during his incarceration indicates a poor likelihood of obtaining and maintaining employment during the plan period. Debtor was given an opportunity to participate in the work release program while incarcerated to address his child support obligation but lost it due to an altercation with the supervisor. This altercation also caused Debtor to forfeit his early release in February for good time, on a date prior to his filing of this bankruptcy case. His testimony regarding employment opportunities upon his release are unsubstantiated and self-serving. Merely stating he will be employed upon his release is insufficient to establish a sufficient prospect of regular income for eligibility purposes.

Also, there appears to be no property of the estate available for the benefit of creditors in Debtor's case. Debtor currently has no postpetition earnings and he has claimed all of his personal property as exempt on Schedule C and thus asserts it is no longer property of the estate available to creditors. According to § 362(b)(2)(B), the automatic stay would not preclude collection of child support from property that is not property of the estate.

Debtor's confirmation hearing is scheduled for May 19, 2011. Even assuming that Debtor was released and obtained employment immediately, the chances of him having sufficient and stable income to make his plan payments as required by § 1326 and his current child support payments pursuant to § 1325(a)(8) appear unlikely. Debtor also admitted during his testimony that he filed bankruptcy with his primary goal being to obtain his release from incarceration. Entangling this Court with state law domestic relation disputes with the primary motive being to undermine the Family Court Contempt Order is

contrary to the purposes of the Bankruptcy Code and, combined with Debtor's misrepresentation of his current income, raises significant questions of good faith.

To date, neither the Trustee nor any other party in interest has requested this case be dismissed or otherwise challenged this Motion. In similar cases in which debtors who are incarcerated prepetition for failure to pay child support file for bankruptcy relief, the Trustee and DSS have raised concerns that these cases frequently fail, resulting in debtors being reincarcerated for failure to pay child support.

### **Conclusion**

Debtor seeks an escape from incarceration pursuant to an unappealed, prepetition Contempt Order and not any postpetition actions of the Defendants. Debtor has not met his burden of demonstrating that Defendants' affirmative consent is necessary or controlling to a request that the Family Court rescind its order and release Debtor from his incarceration. See Overstreet, 164 B.R. at 391-92 (finding that the defendants' involvement in the state court child support collection action ended prepetition and defendants had no obligation to "press the state court for [debtor's] release").

As instructed by the Fourth Circuit in Robbins, this Court will defer at this time to allow the Family Court to interpret its order and consider any relief requested by Debtor. If the Family Court determines under applicable law to release Debtor and allow him an opportunity to obtain the employment necessary to a Chapter 13 bankruptcy case, Debtor will be required to obtain and demonstrate convincing proof of employment within 20 days of his release from incarceration. Should Debtor's bankruptcy case be dismissed for any reason, and with Debtor's consent as expressed at the hearing, any dismissal would be with

prejudice for a period of one year. Based on the foregoing, Debtor's Motion is denied without prejudice.[7]

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**05/12/2011**



Entered: 05/13/2011

/s/ John E. Waites

Chief US Bankruptcy Judge
District of South Carolina

---

[7] Under the circumstances of this case, the Court would also consider abstention pursuant to § 305.